FILED
 2014 Apr-21  PM 01:52
 U.S. DISTRICT COURT
 N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ALABAMA, SOUTHERN DIVISION

| | |
|---|---|
| C. Randy BRYANT )<br>)  **Jury Trial Requested**<br>Plaintiff )<br>)<br>v. ) Case No.: _____<br>)<br>ALABAMA WARRIOR RAILWAY L.L.C. )<br>WATCO COMPANIES L.L.C. )<br>WATCO TRANSPORTATION SERVICES L.L.C. )<br>)<br>Defendants ) | |

COMPLAINT

Comes now the Plaintiff, C.R. Bryant, who alleges the following facts, asserts the following causes of action, and claims the following damages and remedies against the Defendants: (1) the Alabama Warrior Railway L.L.C.; (2) Watco Companies L.L.C.; (3) Watco Transportation Services L.L.C.

Jurisdiction, Parties & Venue

1. This court has federal subject matter jurisdiction over of this action pursuant to 28 U.S.C. § 1331 because Counts 2 and 3 are authorized to be filed in this court by the Federal Employers' Liability Act, 45 U.S.C. § 56 ("FELA"), and Counts 4 and 5 are authorized to be filed in this court by the anti-retaliation provisions of the Federal Rail Safety Act, 49 U.S.C. § 20109(d)(3) ("FRSA"). Furthermore, Counts 1, 6, and 7 are authorized to be filed in this court by the supplemental jurisdiction statute, 28 U.S.C. § 1367(a), because these Alabama State law claims/remedies are so related to the federal claims that they form part of the same case and controversy.

2. Plaintiff is a mentally competent, adult resident citizen of Blount County, Alabama.

3. Defendant Alabama Warrior Railway L.L.C. ("ABWR") is a Kansas limited liability company headquartered in Jefferson County, Alabama, that is a common carrier by railroad engaged

in interstate commerce and the transportation of freight for hire. ABWR sometimes does business by its formal name; other times it does business as the Alabama Warrior Railroad. ABWR's registered agent for service is C.S.C. Lawyers Incorporating Service Inc., which can be served at 150 South Perry Street in Montgomery, Alabama 36104.

4. Defendant Watco Companies L.L.C. ("WatcoCo") is a Kansas foreign limited liability company. Its registered agent for service is C.S.C. Lawyers Incorporating Service Inc., which can be served at 150 South Perry Street in Montgomery, Alabama 36104.

5. Defendant Watco Transportation Services L.L.C. ("WatcoTrans") is a Kansas foreign limited liability company. Its registered agent for service is C.S.C. Lawyers Incorporating Service Inc., which can be served at 150 South Perry Street in Montgomery, Alabama 36104.

6. Defendants Watco Companies L.L.C. and Watco Transportation Services L.L.C. are hereinafter collectively referred to as the "Watco-Defendants."

7. Venue is proper in this division and district pursuant to 28 U.S.C. § 1391(b)(2) and 45 U.S.C. § 56 because a substantial part of the events or omissions giving rise to the claim occurred in this division and district. Venue is also proper in this division and district pursuant to 28 U.S.C. § 1391(b)(1),(c)(2),(d) and 45 U.S.C. § 56 because the Defendants reside and/or do business in this division and district.

## Substantive Facts

8. Plaintiff was at all times material to this complaint employed by Defendants as a locomotive engineer.

9. On 6/5/12, Plaintiff was injured while working in the course and scope of his employment for Defendants on locomotive WAMX 1511.

10. Because of a defective condition, WAMX1511 caught fire.

11. During his attempts to extinguish the fire, Plaintiff was overcome by smoke and fumes and suffered from the effects of smoke inhalation, including shortness of breath, cough, nausea, reflux, dizziness, chest pain, hypertension, and headache.

12. The incident was reported to Defendants, and Plaintiff was taken to the hospital by ambulance.

13. Emergency room medical personnel told Plaintiff that because this was an on-the-job injury that he needed to get a drug test. They also told him that he needed to follow up in a day or so for treatment at an occupational health clinic.

14. Plaintiff reported this to Defendants' General Manager Skilinski, who told him that he did not need a drug test, and instead to get some lunch and to report back to work.

15. Plaintiff did as instructed and returned to work and finished the day.

16. However, the next day, 6/6/12, Plaintiff left work early with a headache and high blood pressure. These injuries were caused, in whole or in part, from the smoke inhalation.

17. On 6/7/12, Plaintiff did not report to work. Instead, Plaintiff's wife called Defendants' Trainmaster Lambert to find out which occupational health clinic she should take Plaintiff for treatment.

18. When they arrived at the clinic, however, Skilinski denied authorization, stating the medical problem was not work related.

19. Plaintiff missed 5 days of work and then returned to duty. However, Plaintiff remained substantially ill from maladies related to the smoke inhalation. Those maladies continue to the present. Plaintiff has requested treatment for these conditions, but said requests were denied by Defendants.

20. Although Plaintiff did not do anything wrong to cause his injury, Defendants pursued a

course of closely scrutinizing everything Plaintiff did following his injury.

21. This was done not only because Plaintiff continued to claim that his continued maladies were caused by smoke inhalation, but also because Plaintiff continued to report unsafe conditions in the workplace.

22. Specifically, Defendants had made Plaintiff a safety committeeman. In this position, Plaintiff made numerous complaints and suggestions to management about hazardous conditions on the job.

23. Instead of taking his concerns seriously, Defendants began to harass and intimidate Plaintiff, who took his concerns to progressively higher management levels, but with no results.

24. The "final straw" occurred when Plaintiff reported a locomotive had been used for 3 days with defective and dangerous steps. Yet, the engine remained in service and was not repaired for several days and even then only after Plaintiff had reported the condition to a senior official.

25. The harassment and retaliation got a lot worse after Plaintiff made this report.

26. In early to mid-February, ABWR management told Plaintiff that he was a trouble-maker.

27. On 2/21/13, Plaintiff was ill and fatigued. Nevertheless, he reported to work because he knew Defendants were shorthanded and there was no other engineer who could work his shift.

28. At the beginning of his shift, Plaintiff told Defendants' General Manager Adam Harper and the conductor, Dean Schexnayder, that he did not feel well and that he had been sick for five days.

29. Later that day, due to exhaustion and illness, Plaintiff fell asleep while the train was stopped and he was waiting for Schexnayder to complete work on the ground.

30. Schexnayder called Harper, who drove to the scene and saw Plaintiff sleeping.

31. Harper woke Plaintiff. Plaintiff again told Harper that he had been sick for 4 or 5 days.

32. Plaintiff was driven home, and he was diagnosed with acute bronchitis (walking pneumonia).

33. Nevertheless, Harper suspended Plaintiff for sleeping on the job and ordered a drug screen, which was negative. A termination hearing was scheduled for 3/11/13.

34. Defendants' proffered justification for terminating Plaintiff was that his medical condition rendered him unable to safely perform his job. However, Watco East Division Director of Operations Doug Halverson saw fit to interview as many of Plaintiff's co-workers that he could to try to find negative information about him.

35. Defendants conducted a "hearing" on 3/11/13. The hearing officer was General Manager John Snow. Also present were Harper and Watco East Region Human Resources Manager Will Burt.

36. Plaintiff admitted that he did not comply with the rule on sleeping, but argued that discipline was inappropriate because he had extenuating circumstances, specifically he was sick and Defendants knew he was sick. As noted, he had been diagnosed with walking pneumonia, and he was only trying to help Defendants by working that day.

37. Statements from its own investigation of Plaintiff proved that management and other co-workers knew Plaintiff also had a medical sleeping condition that was caused, in whole or in part, by smoke inhalation from the fire. However, they chose not to present this evidence during the hearing.

38. Plaintiff had 26 years of railroad experience, and with the exception of a side collision (that was caused by a defect in that locomotive, not engineer error, and was supposed to have been purged from Plaintiff's file), had no other adverse incident in his record.

39. Harper also admitted during the "hearing" that Plaintiff had always performed his job.

40. Nevertheless, Plaintiff was terminated on 3/19/13.

41. Although Defendants claimed that the cause of the termination was Plaintiff's rule violation, the real reason was (1) to retaliate against Plaintiff for having and reporting an injury (2) to retaliate against Plaintiff for making other reports about workplace safety, and (3) to intimidate Plaintiff and other employees so they would not report future injuries, would not seek medical treatment for injuries, and would not report other unsafe conditions.

42. Defendants' discipline of Plaintiff was much more severe and different than the way they treated other similarly situated employees.

43. Furthermore, Defendants did not try to get Plaintiff treatment for his condition (which was caused in substantial part by Defendants' defective locomotive) and they did not try to accommodate Plaintiff's condition.

44. Plaintiff could have been treated and be able to work with no side effects. However, because he was terminated, he now has no medical insurance with which to get treatment.

45. Defendants have also refused to pay for some of Plaintiff's medical bills arising out of the fire, including the ambulance bill.

Prefiling Requirements

46. On or about 5/29/13, Plaintiff filed an administrative complaint with the OSHA Regional Director (Case No. 4-0350-13-054) regarding the claims made in Counts 4 and 5 pursuant to law.

47. On 7/19/13, the Federal Railroad Administration ("FRA") informed Plaintiff that Defendants violated federal law by not reporting the fire (Case No. 2013-ABWR-020717).

48. On 11/18/13, the OSHA Regional Administrator entered findings that stated, among other things, that there allegedly was no FRSA violation.

49. On 11/21/13, Plaintiff timely objected to the findings of the Regional Administrator and requested a hearing before the Labor Department's Office of Administrative Law Judges ("OALJ").

The case was assigned to Hon. Larry W. Price (Case No. 2014-FRS-26).

50. On 4/1/14, Plaintiff filed a statement with the OALJ and Judge Price, giving his notice of his intent to file this lawsuit in this court.

51. As of the date of the filing of this complaint, the Secretary of Labor had not issued a final decision on Plaintiff's administrative complaint. None of the delay is attributable to Plaintiff.

<u>Causes of Action / Remedial Theories</u>

COUNT 1

EQUITABLE VEIL-PEIRCING / ALTER-EGO / SINGLE EMPLOYER

52. Plaintiff readopts and realleges each and every allegation set forth above, as if fully set out herein in full.

53. Although ABWR and the Watco-Defendants were registered with the State of Alabama as separate entities, the Watco-Defendants reserved the right to control and/or actually controlled the operational and fiscal activities of ABWR and they were all operated as a single business enterprise.

54. As such, ABWR is the alter ego of the Watco-Defendants and vice-versa, and they are all one business, not several independent businesses.

55. This single business enterprise operated a common carrier railroad for the transportation of freight for hire in interstate commerce, and, as such is subject to the provisions of the FELA and FRSA.

56. Plaintiff was an employee of this single business enterprise, and at the time of the accident made the basis of this complaint, part of the duties of Plaintiff in connection with his employment by this single business enterprise was in furtherance of interstate commerce.

WHEREFORE, PREMISES CONSIDERED, the Plaintiff requests a judgment in his favor that holds these Defendants liable to the Plaintiff for the judgments rendered against their alter-egos

and that holds these Defendants liable to the Plaintiff for the damage awards imposed on their alter-egos for the injuries and damages set-forth in Counts 2 thru 7 below.

## COUNT TWO

### FELA NEGLIGENCE PERSONAL INJURY CLAIMS

57. Plaintiff adopts all factual allegations stated above as if they were fully stated herein.

58. This count seeks damages for Plaintiff's injuries pursuant to the FELA.

59. As a result of the incident of 6/5/12 as described, Plaintiff has been caused (1) to lose wages and benefits from his employment in the past, and he will lose such wages and benefits in the future, (2) to suffer great physical pain and mental anguish in the past, and he will be caused to suffer such great physical pain and mental anguish in the future, (3) to undergo serious and painful medical care and treatment in the past, and he will be caused to undergo more medical care and treatment in the future, (4) to incur medical and treatment expenses in the past, and he will be caused to undergo more medical care and treatment expense in the future, and (5) to be permanently injured, which has caused him permanent damage to his quality of life and to be permanent impaired in his ability to work and earn money in the future.

60. Plaintiff was caused to sustain and suffer all of the aforesaid injuries and damages as a result, in whole or in part, of the negligence of the officers, agents or employees of ABWR and/or all Defendants while acting in the line and scope of employment.

61. In addition and in the alternative, Plaintiff was caused to sustain and suffer all of the aforesaid injuries and damages as a result, in whole or in part, of a defect or insufficiency due to the negligence of ABWR and/or all Defendants in their engines, cars, appliances, machinery, roadbed, works or other equipment.

62. In addition and in the further alternative, Plaintiff was caused to sustain and suffer all of

the aforesaid injuries and damages as a result, in whole or in part, of the negligent failure of ABWR and/or all Defendants to provide Plaintiff with a reasonably safe place to work and with reasonably safe and suitable tools and equipment, all as aforesaid.

63. In addition and in the further alternative, Plaintiff was caused to sustain and suffer all of the aforesaid injuries and damages as a result, in whole or in part, of the negligence of ABWR and/or all Defendants in hiring, training, supervising, and disciplining its employees.

WHEREFORE, PREMISES CONSIDERED, Plaintiff respectfully requests this Honorable Court: (1) enter judgment in his favor and against ABWR and/or all Defendants; (2) award him compensatory damages for any and all damages he sustained as a result of the wrongful conduct in an amount determined by the jury; (3) award him court costs; and (4) grant him any and all relief necessary to make him whole.

## COUNT THREE

## FELA ABSOLUTE LIABILITY PERSONAL INJURY CLAIMS

64. Plaintiff adopts all factual allegations stated above as if they were fully stated herein.

65. This count seeks damages for Plaintiff's injuries pursuant to the FELA.

66. Plaintiff was caused to sustain and suffer all of the aforesaid injuries and damages as a result, in whole or in part, of ABWR's and/or all Defendants' violation of the Federal Locomotive Inspection Act, 49 U.S.C. §§ 20701-20703 ("FLIA"), including (but not limited to) § 20701(a), which mandates that "[a] railroad carrier may use or allow to be used a locomotive ... on its railroad line only when the locomotive ... and its parts and appurtenances are in proper condition and safe to operate without unnecessary danger of personal injury ... ."

67. Plaintiff was caused to sustain and suffer all of the aforesaid injuries and damages as a result, in whole or in part, of Defendants' violation of the Locomotive Safety Standards promulgated

by the FRA at 49 C.F.R. Part 229, including (but not limited to) § 229.7(a)(1), which mirrors the language of the FLIA and states that "[t]he [FLIA] makes it unlawful for any carrier to use or permit to be used on its line any locomotive unless the entire locomotive and its appurtenances [a]re in proper condition and safe to operate in the service to which they are put, without unnecessary peril to life or limb ... ," and § 229.45, which similarly mandates that "[a]ll ... components on a locomotive shall be free of conditions that endanger the safety of the crew, locomotive or train."

WHEREFORE, PREMISES CONSIDERED, Plaintiff respectfully requests that this Honorable Court: (1) enter judgment in his favor and against ABWR and/or all of the Defendants; (2) award him compensatory damages for any and all damages he sustained as a result of the wrongful conduct in an amount determined by the jury; (3) award him court costs; and (4) grant him any and all relief necessary to make him whole.

## COUNT FOUR

## FRSA RETALIATION CLAIMS

68. Plaintiff adopts all factual allegations stated above as if they were fully stated herein.

69. This count seeks damages for retaliation and intimidation pursuant to the FRSA.

70. Plaintiff was hurt on the job and reported it to Defendants. This was a protected activity.

71. Plaintiff also reported numerous other safety concerns/conditions to Defendants. These were all also protected activities.

72. Plaintiff also told his supervisor that he was sick the day he was disciplined and taken out of service. This was also a protected activity.

73. Defendants knew Plaintiff engaged in the protected activity and charged him with a rule violation and terminated him. This was an adverse action.

74. Plaintiff's protected activity was a cause, in whole or in part, of the adverse action. Stated

differently, Plaintiff's protected activity was a contributing factor of the adverse action.

75. Plaintiff has lost wages and benefits. Plaintiff has also suffered from emotional distress, worry, fear, and humiliation because of the wrongful conduct.

WHEREFORE, PREMISES CONSIDERED, Plaintiff respectfully requests this Honorable Court: (1) enter judgment in his favor and against ABWR and/or all of the Defendants; (2) award him compensatory damages for any and all damages he sustained as a result of the wrongful conduct in an amount determined by the jury; (3) award him punitive damages in an amount determined by the jury (but not to exceed $250,000.00); (4) award him litigation costs, expert witness fees, and reasonable attorney fees in the prosecution of this action; and (5) grant him any and all relief necessary to make him whole.

## COUNT FIVE

### FRSA INTERFERENCE WITH MEDICAL TREATMENT CLAIMS

76. Plaintiff adopts all factual allegations stated above as if they were fully stated herein.

77. This count seeks damages for interference with medical treatment pursuant to the FRSA.

78. Defendants, their officers, and/or their employees denied, delayed, and/or interfered with the medical or first aid treatment of Plaintiff, who was injured during the course of employment. They continue to do so.

79. Plaintiff has suffered physical pain and discomfort as well as emotional distress, worry, fear, and humiliation because of the wrongful conduct.

WHEREFORE, PREMISES CONSIDERED, Plaintiff respectfully requests that this Honorable Court: (1) enter judgment in his favor and against ABWR and/or all of the Defendants; (2) award him compensatory damages for any and all damages he sustained as a result of the wrongful conduct in an amount determined by the jury; (3) award him punitive damages in an

amount determined by the jury (but not to exceed $250,000.00); (4) award him litigation costs, expert witness fees, and reasonable attorney fees in the prosecution of this action; and (5) grant him any and all relief necessary to make him whole.

COUNT SIX

ALABAMA COMMON LAW NEGLIGENCE CLAIMS

80. Should this Court determine that Defendants are not operating a single business enterprise and that ABWR and the Watco-Defendants are separate entities for purposes of liability, Plaintiff asserts this count against the Watco-Defendants pursuant to the Alabama common law.

81. Plaintiff adopts and realleges the other factual allegations set forth in the paragraphs above as if they were fully set forth herein.

82. Plaintiff's injury was foreseeable to these Defendants. As owners/possessors of the equipment at issue, the Watco-Defendants had a duty to foreseeable users of said equipment to use reasonable care and to follow the standard of care in the industry to remove dangers from the equipment or warn about such dangerous conditions. The Watco-Defendants breached these duties by negligently providing an unsafe and unreasonably dangerous locomotive to be used in the workplace, by negligently maintaining it, and by negligently failing to warn Plaintiff of its dangerous condition. The Watco-Defendants knew or should have known about the locomotive's dangerous condition, but they did nothing to remedy it or warn others of its dangerous condition.

83. In addition, the Watco-Defendants also undertook by contract or otherwise to provide Plaintiff with a safe place to work and with safe and suitable equipment. For the reasons stated above, the locomotive was neither safe nor suitable for work.

84. In addition, by their contracts, their policies, and by their other conduct, the Watco-Defendants and their employees negligently created an environment where this tragedy was

foreseeable to occur.

85. In addition, the employees of the Watco-Defendants acted with negligence towards the Plaintiff while acting in the course and scope of employment with the Watco-Defendants. The Watco-Defendants are vicariously liable for the negligent conduct of their employees under the doctrine of respondeat superior.

86. In addition, the Watco-Defendants reserved the right to control the manner and methods of persons or companies that created the dangerous condition. These employees committed the conduct set-forth above while acting in the course and scope of employment with the Watco-Defendants.

87. As a direct and proximate result of the combining and concurring conduct of the Watco-Defendants and their employees, Plaintiff was injured and damaged as set-forth above.

WHEREFORE, PREMISES CONSIDERED, Plaintiff respectfully requests this Honorable Court: (1) enter judgment against the Watco-Defendants, (2) award him compensatory damages in an amount to be determined by a jury, (3) award him court costs and interest as allowed by law, and (4) award him all other relief as the Court deems just and proper.

COUNT SEVEN

ALABAMA COMMON LAW WANTONNESS CLAIMS

88. Should this Court determine that Defendants are not operating a single business enterprise and that ABWR and the Watco-Defendants are separate entities for purposes of liability, Plaintiff asserts this count against the Watco-Defendants pursuant to the Alabama common law.

89. Plaintiff adopts and realleges the other factual allegations set forth in the paragraphs above as if they were fully set forth herein.

90. By consciously doing and/or not doing the acts set-forth above, the Watco-Defendants

and their employees knew that injury would likely or probably result to someone. Their own conduct was wanton, reckless, and oppressive.

91. As a direct and proximate result of the combining and concurring conduct of the Watco-Defendants and their employees, Plaintiff was injured and damaged as set-forth above.

92. The Watco-Defendants are vicariously liable for the wanton conduct of their employees and others for the reasons stated above.

WHEREFORE, PREMISES CONSIDERED, Plaintiff respectfully requests this Honorable Court: (1) enter judgment against the Watco-Defendants , (2) award him compensatory damages in an amount to be determined by a jury, (3) award him punitive damages in an amount to be determined by a jury, (4) award him court costs and interest as allowed by law, and (5) award him all other relief as the Court deems just and proper.

**Plaintiff Requests a Trial by Jury**

Respectfully submitted,

 */s/ W.C. Tucker Jr.*
W.C. Tucker Jr. (TUC-006)
Attorney for Plaintiff C. Randy Bryant

OF COUNSEL:
MAPLES, TUCKER & JACOBS
2001 Park Place North; Ste. 501
Birmingham, Alabama 35203
Phone: (205)322-2333
Fax:    (205)322-4962
Email: bill@mtandj.com

-14-

Request for Service by Certified Mail

      Plaintiff requests that the Clerk immediately issue a summons pursuant to A.R.C.P. 4(i)(2) and F.R.C.P. 4(e)(1) for the Defendant to be served at the following address by certified mail at the following address:

ALABAMA WARRIOR RAILWAY L.L.C.
c/o C.S.C. Lawyers Incorporating Service Inc., its registered agent for service
150 South Perry Street
Montgomery, Alabama 36104

WATCO COMPANIES L.L.C.
c/o C.S.C. Lawyers Incorporating Service Inc., its registered agent for service
150 South Perry Street
Montgomery, Alabama 36104

WATCO TRANSPORTATION SERVICES L.L.C.
c/o C.S.C. Lawyers Incorporating Service Inc., its registered agent for service
150 South Perry Street
Montgomery, Alabama 36104

                                                    */s/ W.C. Tucker Jr.*
                                                    W.C. Tucker Jr. (TUC-006)